# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BARRY C. ROWE,<br><br>                  Plaintiff,<br>    v.<br>ROMEO ARANAS, *et al.*,<br><br>                  Defendants. | Case No. 3:16-cv-00535-MMD-VPC<br><br>ORDER |

Before the Court is Defendants Romeo Aranas, Isidro Baca, and David Mar's (collectively, "Defendants") motion for summary judgment ("Defendants' Motion"). (ECF Nos. 27, 29 (sealed).) The Court has reviewed Plaintiff Barry C. Rowe's response (ECF No. 35) and Defendants' reply (ECF No. 38).

Additionally before the Court is Plaintiff's motion for summary judgment ("Plaintiff's Motion") (ECF No. 13). The Court has reviewed Defendants' response (ECF Nos. 40, 42 (sealed)) and Plaintiff's reply (ECF No. 44).

For the following reasons, the Court grants Defendants' Motion and denies Plaintiffs' Motion as moot.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). (ECF No. 6 at 1.) Plaintiff is currently housed at Southern Desert Correctional Center ("SDCC"), but the events giving rise to this action occurred while he was incarcerated at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. (*Id.*) Pursuant to 42 U.S.C. § 1983, Plaintiff brings an Eighth Amendment deliberate

indifference claim against NDOC Medical Director Dr. Romeo Aranas ("Dr. Aranas"), NNCC Warden Isidro Baca ("Warden Baca"), and Dr. David Mar ("Dr. Mar"). (*Id.* at 2.) Plaintiff seeks monetary, injunctive, and declaratory relief, as well as punitive damages. (*Id.* at 10.)

As set forth in his Complaint, Plaintiff's claim is based on his allegation that Defendants knowingly deprived him of a cure to his chronic hepatitis-c viral infection ("HCV") for nonmedical reasons. (*Id.* at 4-5.) Plaintiff was diagnosed with HCV in 2015. (*Id.* at 4.) Plaintiff asserts that Dr. Aranas, Dr. Mar, and Warden Baca have refused to provide treatment for his HCV infection despite his repeated requests. (*Id.*) In particular, Plaintiff asserts that Defendants have denied his requests for Harvoni, a prescription medication that essentially cures HCV, due to the high cost of the medication. (*Id.* at 4-5.) Plaintiff believes that Defendants' failure to treat his HCV is causing ongoing damage to his liver, as well other unspecified psychological, mental, and physical injuries. (*Id.*) The Court screened Plaintiff's claim on June 21, 2017, and permitted Plaintiff to proceed against Dr. Mar, Dr. Aranas, and Warden Baca on his Eighth Amendment claim of deliberate indifference to his serious medical needs. (ECF No. 5 at 6.)

On September 22, 2017, Plaintiff submitted a notice of filing of supplemental ground and claim, purportedly under Federal Rules of Civil Procedure Rule 15(d). (ECF No. 12.) Therein, he sought to add an Eighth Amendment and Americans with Disabilities Act ("ADA") challenge against NDOC Medical Directive 219, which excludes inmates from being considered for HCV treatment based on specified conditions. Defendants filed an opposition to Plaintiff's motion to supplement his Complaint, arguing that Plaintiff was aware of Medical Directive 219 at the time he filed his original Complaint, and that Plaintiff's ADA claim was legally frivolous. (ECF No. 15.)

Plaintiff filed his Motion on September 22, 2017. (ECF No. 13.) However, Defendants did not file an opposition. Instead, Defendants filed a motion to stay briefing on Plaintiff's Motion until the Court resolved Plaintiff's motion to supplement his Complaint. (ECF No. 16).

2

On December 14, 2017, the Court held a hearing to discuss the parties' respective positions on Plaintiff's notice of filing of supplemental ground and claim. (ECF No. 24.) After Defendants acknowledged that Plaintiff adequately pleaded his Eighth Amendment claim in his original Complaint, the Court denied Plaintiff's supplemental pleading. (*Id.*) Plaintiff's Motion was also discussed at the hearing. (*Id.*) The Court advised Plaintiff that the motion was "premature," and asked Plaintiff if he would be "interested in withdrawing the motion without prejudice with leave to re-file at a more appropriate time." (*Id.*) Plaintiff declined to withdraw his motion. (*Id.*) The Court stayed the briefing on Plaintiff's Motion, pending a further order of the Court, and ordered Defendants to file an answer or otherwise plead. (*Id.*)

On January 16, 2018, Defendants filed their Motion on the grounds that Plaintiff cannot prove Defendants disregarded his medical condition. (ECF No. 27 at 6-9.) Plaintiff did not respond within the specified time frame, so the court *sua sponte* extended his deadline to March 16, 2018. (ECF No. 33.) Plaintiff filed his opposition on March 19, 2018, and Defendants replied on April 2, 2018.[1] (ECF Nos. 35, 38.)

## II.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the

---

[1] Plaintiff filed a request to remove the stay on his Motion, in which he asserted that he did not receive notice of Defendants' Motion until March 5, 2018. (ECF No. 34.) Plaintiff raises the same argument in his opposition to Defendants' Motion. (ECF No. 35 at 2.) However, Defendants' Motion attaches a signed certificate of service. (ECF No. 27 at 15.) Moreover, the Court issued a minute order advising Plaintiff of the applicable deadlines and consequences for failing to respond. (ECF No. 32.) The Court declines to provide Plaintiff any more leniency than he is already due as a *pro se* litigant.

suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

///

///

## III. DISCUSSION

### A. Defendant Warden Baca

Defendants first argue that Plaintiff has failed to state a claim against Warden Baca because the Complaint does not contain allegations that Warden Baca personally participated in depriving Plaintiff of medical care. (ECF No. 27 at 8-9.) Plaintiff responds that Warden Baca personally participated in the challenged conduct when he reviewed Plaintiff's medical grievances and failed to order Plaintiff's physician to prescribe him Harvoni or other advanced HCV medication. (ECF No. 35 at 6.)

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* "There is no respondeat superior liability under section 1983." *Id.* (citing *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680-81 (9th Cir.1984).

Plaintiff has failed to produce any evidence to suggest that Warden Baca reviewed Plaintiff's medical grievances. The grievance responses Plaintiff attached to his Motion shows that prison officials other than Warden Baca authored responses at the informal, first, and second grievance levels. (*See* ECF No. 13 at 17-32.) Plaintiff's conclusory allegation that Warden Baca was aware of his medical grievance is not enough to raise a genuine dispute as to whether Warden Baca knew of and disregarded Plaintiff's medical need for HCV treatment with Harvoni. *See Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff also has failed to provide evidence that Warden Baca was otherwise aware of Plaintiff's HCV diagnosis. (*See* ECF No. 35.) In fact, it appears that Warden Baca's duties do not extend to medical decision-making. (*See* ECF Nos. 27-4 at 2.) Warden Baca lacks the "authority to order any kind of specific medical treatment," and has "no training in regards to the medical care or treatment of inmates." (*Id.*) Moreover, NDOC Medical

1  Directive 219.02 states that decisions to treat an inmate's HCV are rendered by a
2  "committee made up of at least three practitioners of the medical staff," and makes no
3  mention of review by the warden or other non-medical administrative officials. (ECF No.
4  27-1 at 5.) Even viewing the facts in the light most favorable to Plaintiff, there is no
5  evidence that Warden Baca was involved in, or aware of, treatment decisions concerning
6  Plaintiff's HCV.

Accordingly, the Court will grant summary judgment in favor of Warden Baca.[2]

### B. Eighth Amendment Deliberate Indifference

#### 1. Legal Standard

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). The Eighth Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in the Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks omitted). First, the objective component concerns whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those

---

[2]The Court will not address Defendants' argument that Dr. Aranas had no personal participation in Plaintiff's HCV treatment because that argument is moot in light of the discussion *infra.*

"that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation marks omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotation marks omitted). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066.

Deliberate indifference is a high legal standard; a medical professional's mistake, negligence, or malpractice is not sufficient to constitute deliberate indifference. *Toguchi*, 391 F.3d at 1051; *Estelle*, 429 U.S. at 105-06. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Toguchi*, 391 F.3d at 1060; *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care . . . ." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison official's "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found constitutionally infirm. *Id.* (quoting *McIntosh*, 90 F.3d at 332). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—

though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 2. Analysis

Plaintiff claims that Dr. Mar and Dr. Aranas's decision to refrain from treating Plaintiff's HCV with curative medication, such as Harvoni, constitutes deliberate indifference to Plaintiff's serious medical need, in violation of the Eighth Amendment. (*See* ECF No. 6.) Defendants assert that they are entitled to summary judgment in their favor because Plaintiff "received regular blood testing to monitor eligibility and need for advanced treatment." (ECF No. 27 at 6.)

Defendants' evidence shows that Plaintiff received "continuous monitoring and testing including blood draws, sonograms, and ultrasounds to determine [Plaintiff's] [Aspartate Aminotransferase Platelet Ratio Index ("APRI")] levels and liver function and to rule out signs of liver damage." (ECF No. 29-1 at 4.) NDOC's medical policy places particular emphasis on examining an inmate's APRI formula, as NDOC determines it to be a reliable and non-invasive indicator of the amount of liver fibrosis, or damage, the inmate has sustained. (ECF No. 29-1 at 2.) According to Dr. Aranas, "[i]f one's APRI Score is above 0.5, there is a chance of some liver damage (fibrosis). If the APRI score is above 1.5, the person likely has, or is quickly approaching, cirrhosis of the liver." (*Id.*) Dr. Aranas explained that, in his medical judgment, he "would likely decline to recommend an inmate with Chronic Hepatitis-C, who has an APRI score below 2.0, for advanced forms of Chronic Hepatitis-C treatment, due to the risk that drug intervention may cause." (*Id.* at 3). Additionally, Defendants state that NDOC medical staff examine inmates with HCV for physical signs of compromised liver function, such as spider angiomata (vascular legions on the chest and body), palmar erythema (reddening of the palms), gynecomastia (increase in breast gland size), ascites (fluid accumulation in the abdomen), and jaundice. (ECF No. 27 at 6; ECF No. 29-1 at 2.)

Dr. Aranas attests that the battery of tests performed on Plaintiff have all come back "clear," indicating that Plaintiff does not suffer from decreased liver function. (ECF No. 29-

1 at 4.) Dr. Aranas reviewed Plaintiff's medical records and noted that, as of the time of his declaration attached to Defendants' Motion, Plaintiff was "not exhibit[ing] any symptoms of decreased liver function" and had an APRI score of .9219. (*Id.*) Defendants' opposition to Plaintiff's Motion (filed about three months after Defendants' Motion) shows that Plaintiff was tested again in January 2018 and that his APRI score dropped to 0.8. (ECF No. 40 at 3.) Plaintiff does not dispute that Defendants have monitored his disease in this manner. (*See* ECF No. 35 at 3-5.)

Because Plaintiff received at least some medical attention, the relevant inquiry for the purpose of summary judgment is whether Plaintiff can establish that Defendants' chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to plaintiff's health." *McIntosh*, 90 F.3d at 332. He cannot. In fact, Plaintiff fails to provide any evidence in his opposition brief. Without any evidence or testimony, a factfinder would be unable to infer from Dr. Mar and Dr. Aranas's treatment decisions alone that they deliberately made a medically unacceptable decision. Nor has Plaintiff provided any direct evidence of deliberate indifference, such as a personal observation suggesting that Defendants acted *solely* out of personal animus or financial concerns. *See Peralta,* 744 F.3d at 1082 ("Lack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations."); *see also Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (recognizing that an Eighth Amendment violation occurs where cost is "considered to the exclusion of reasonable medical judgment about inmate health")*.*

Instead, Plaintiff asserts that Defendants were aware that their decision to wait to treat Plaintiff's HCV would cause unnecessary damage to Plaintiff's liver, which may ultimately lead to permanent scarring and death. (ECF No. 35 at 3, 6.) Again, Plaintiff fails to provide any evidence to support the factual underpinnings of his claim. His assertion regarding what Defendants knew is unsupported and inadmissible. And given Defendants' showing that Plaintiff's HCV may not progress and is currently stable (ECF No. 29-1 at 2),

Defendants' decision to monitor Plaintiff's condition constitutes a medical calculus that a jury could not reasonably question without some evidence.

Plaintiff further argues that Medical Directive ("MD") 219 violates the Eighth Amendment because it categorically delays advanced treatment to inmates with HCV until they have severe liver damage or another disease. However, Plaintiff's Complaint made no mention of MD 219 or any other policy of delaying treatment. (ECF No. 1-1; ECF No. 6.) He was permitted to proceed on his Eighth Amendment claim based on his allegations that Defendants deliberately refused to provide *any* medical treatment for his HCV, due in part to cost. (ECF No. 5.)

Second, Plaintiff moved to supplement his Complaint to include his claim relating to MD 219 (ECF No. 13), but the Court held a hearing and, after discussing the matter, denied his motion. (ECF No. 24.) Plaintiff cannot now amend his claim to avoid summary judgment.[3] *See, e.g.*, *Harris v. Best Buy Stores, L.P.*, No. 15-CV-00657-HSG, 2015 WL 8527332, at *4 (N.D. Cal. Dec. 11, 2015) (quoting *Ennis v. Sigurdson*, 185 F.3d 866 (9th Cir. 1999)) ("The Ninth Circuit has stated a 'motion for leave to amend is not a vehicle to circumvent summary judgment.'").

Third, even if the Court considered Plaintiff's argument regarding MD 219, Plaintiff fails to raise a genuine dispute because he provides no medical evidence to ground a jury's finding that MD 219 is constitutionally defective. The exhibit that Plaintiff attaches to his Motion—a copy of his grievance—is plainly immaterial to the policy.

Finally, Plaintiff's attempt to borrow the factual and legal findings made in related cases is to no avail. The Court cannot take judicial notice of the facts that other Courts have accepted in order to find evidentiary support for Plaintiff's assertions. *See, e.g.*, *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 829 (5th Cir. 1998). In addition, two of the cases Plaintiff cites, *Postowsko v. Mo. Dep't of Corr.*, No. 2:16-cv-4219-NKL, 2017 WL 1968317 (W.D. Mo. 2017), and *Allah v. Thomas*, 679 F. App'x. 216 (3rd Cir. 2017), were

---

[3]Plaintiff also attempts to bring a claim under the ADA. Because this claim was not mentioned in the Complaint (ECF No. 6), and dismissed as stated in his motion to supplement (ECF No. 24), the Court declines to consider it here.

considered on a motion to dismiss posture, where the plaintiff's allegations are accepted as true.

Accordingly, the Court finds that Plaintiff has not offered sufficient evidence to raise a genuine issue of material fact that Dr. Mar and Dr. Aranas were deliberately indifferent to his HCV. Defendants are therefore entitled to summary judgment on this claim. For this reason, Plaintiff's Motion will be denied as moot. The Court notes that Plaintiff's Motion suffers from the same flaws present in his opposition, as he provides insufficient evidence to support his Motion and impermissibly relies on the factual findings of related cases to make his evidentiary showing.

## IV.　CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 27) is granted.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 13) is denied as moot.

DATED THIS 27th day of August 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE